J-S01023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR SAXON SECURITIES TRUST 2003-1 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CONNIE WILSON AND ZEKE WILSON | |
| APPEAL OF CONNIE WILSON | |
| | No. 816 WDA 2014 |

Appeal from the Order January 23, 2014
In the Court of Common Pleas of Potter County
Civil Division at No(s): 2010-CV-20

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 07, 2015**

Connie Wilson ("Wife") appeals from an order granting summary judgment in this mortgage foreclosure action to Deutsche Bank Trust Company Americas, as trustee for Saxon Securities Trust 2003-1 ("the Bank")[1].  We affirm.

_____

[1] The Bank refers to itself in its brief as "Deutsche Bank Trust Company Americas f/k/a Bankers Trust Company, as Trustee for Saxon Asset Securities Trust 2003-1, Mortgage Loan Asset Backed Certificates, Series 2003-1."  The Bank commenced this action under the name "Deutsche Bank Trust Company Americas, as trustee for Saxon Securities Trust 2003-1," and the trial court granted summary judgment to the Bank under this name.  There is no motion in the record to amend the Bank's name.  Therefore, the
*(Footnote Continued Next Page)*

The record reveals that on February 24, 2003, Wife and Zeke Wilson ("Husband") obtained a loan in the amount of $45,850 from America's Moneyline Inc. The loan was evidenced by a note and secured by a mortgage in favor of America's Moneyline Inc. that was recorded in Potter County[2]. On June 3, 2009, the mortgage was assigned to Saxon Mortgage, Inc. and then to the Bank. Both assignments were recorded[3]. The note was likewise indorsed to Saxon Mortgage, Inc., which in turn indorsed it in blank[4] and transferred it to the Bank, its current holder[5].

Husband and Wife failed to make mortgage payments after February 1, 2009[6]. The Bank complied with the notice requirements under Act 6 and Act 91[7] and brought this foreclosure action in January 2010[8]. On September

*(Footnote Continued)* ───────────────

effect of our decision is to affirm the judgment in favor of "Deutsche Bank Trust Company Americas, as trustee for Saxon Securities Trust 2003-1."

[2] Bank Compl. ¶ 3; Answer ¶ 3; Bank Mot. Summ. J. ¶ 5 & Exs. A, A1.

[3] Bank Compl. ¶ 3; Bank Mot. Summ. J. ¶¶ 6-7 & Exs. A2, A3.

[4] Bank Mot. Summ. J. ¶ 5 & Ex. A1 at 3.

[5] Bank Mot. Summ. J. ¶¶ 6-7 & Ex. B ¶ 4.

[6] Bank Mot. Summ. J. ¶¶ 8-10 & Exs. B & C.

[7] Bank Mot. Summ. J. Ex. D (Act 6/91 notice). Act 6, the Loan Interest and Protection Law, is codified at 41 P.S. § 101 *et seq*. Act 91, the Homeowner's Emergency Mortgage Assistance Act of 1983, is codified at 35 P.S. § 1680.401c *et seq*.

[8] Bank Mot. Summ. J. ¶¶ 11-12 & Ex. D.
*(Footnote Continued Next Page)*

20, 2013, the Bank moved for summary judgment, alleging that there were no disputed issues of fact as to the default in mortgage payments or the Bank's entitlement to enforce the mortgage. On January 23, 2014, the trial court granted summary judgment to the Bank, holding that the Bank is the real party in interest, has standing to enforce the mortgage and note, and carried its evidentiary burden through an affidavit showing the default in mortgage payments.

On February 21, 2014, Wife filed a timely notice of appeal. On February 24, 2014, the trial court ordered Wife to file a Pa.R.A.P. 1925(b) statement within 21 days. On April 10, 2014, after expiration of the 21-day deadline, Wife filed a petition for extension of time within which to file her Pa.R.A.P. 1925(b) statement *nunc pro tunc*. In an order docketed on April 16, 2014, the trial court granted Wife an additional 21 days within which to file a Pa.R.A.P. 1925(b) statement[9]. On May 2, 2014, Wife filed a Pa.R.A.P. 1925(b) statement.

Before we analyze the issues raised in Wife's appeal, we must first determine whether Wife has waived these issues due to the untimeliness of her Pa.R.A.P. 1925(b) statement. We conclude that the trial court properly permitted Wife to file a Pa.R.A.P. 1925(b) statement *nunc pro tunc*.

Pa.R.A.P. 1925(b)(2) provides:

*(Footnote Continued)* ─────────────────

[9] Order Docketed April 16, 2014.

> The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the Statement. Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed. Good cause includes, but is not limited to, delay in the production of a transcript necessary to develop the Statement so long as the delay is not attributable to a lack of diligence in ordering or paying for such transcript by the party or counsel on appeal. **In extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc*.**

*Id*. (emphasis added). Although the trial court's order does not explicitly mention the final sentence of Rule 1925(b)(2), it appears that the court granted Wife's petition pursuant to this provision. We review this decision for abuse of discretion. *Cf. Commonwealth v. Williams*, 893 A.2d 147, 150 (Pa.Super.2006) ("an abuse of discretion standard governs our review of the propriety of a grant or denial of an appeal *nunc pro tunc*").

Wife alleged in her petition for extension that before the Pa.R.A.P. 1925 order arrived in the mail, she was forced to flee her home due to "a domestic violence issue", and she did not return home until April 9, 2014, when Husband was admitted into the hospital[10]. During her absence, "upon advice," she did not leave a forwarding address with the post office "due to

_____

[10] Wife's Petition For Extension Of Time To File [Pa.R.A.P. 1925(b) Statement] *Nunc Pro Tunc*, p. 1.

concerns regarding [Husband's] discovery of [her] location."[11] Communications with Husband, who remained in the home, "indicated that there was no mail from the court."[12]  Upon her return home, she found an unopened letter from the court containing the Pa.R.A.P. 1925 order[13].  One day later, she filed her petition for leave to file a Pa.R.A.P. 1925(b) statement *nunc pro tunc*[14].

The facts alleged in Wife's petition were "extraordinary," the operative term under Pa.R.A.P. 1925(b)(2), because her domestic travails prevented her from discovering the trial court's Pa.R.A.P. 1925 order between its issuance on February 24, 2014 and her return home on April 9, 2014. Moreover, upon discovering the unopened order, she immediately filed a petition seeking an extension of time within which to file her Pa.R.A.P. 1925(b) statement.  Under these circumstances, the trial court properly exercised its discretion by granting her leave to file her Pa.R.A.P. 1925(b) statement *nunc pro tunc*.

Wife raises the following issues on appeal:

_____

[11] ***Id***.

[12] ***Id***.

[13] ***Id***.

[14] ***Id***.

1. Should the lower court's order for summary judgment be overturned and the complaint dismissed with prejudice when the Complainant lacks standing to bring the current action?

2. Should the lower court's order for summary judgment be overturned and the complaint dismissed with prejudice when the Complainant has failed to establish ownership of the original note?

3. Should the lower court's order for summary judgment be overturned and the complaint dismissed with prejudice when the Complainant has failed to properly verify their Complaint?

4. Should the lower court's order for summary judgment be overturned and the complaint dismissed with prejudice when the Complainant's actions in regard to the underlying instrument are in violation of state and/or federal laws regulating the transfer of financial instruments?

5. Should the lower court's order for summary judgment be overturned and the complaint dismissed with prejudice when the Complainant has failed to establish legal ownership of the mortgage and/or underlying note?

6. Should the lower court's order for summary judgment be overturned and the complaint dismissed with prejudice when the Plaintiff cannot enforce the promissory note?

7. Should the lower court's order for summary judgment be overturned when both the assignment(s) of the mortgage and the signatures on the assignment thereof give rise to genuine issues of material fact?

Brief For Appellant, pp. 1-2.

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary. In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Murphy v. Duquesne University***, 777 A.2d 418, 429 (Pa.2001).

We will consider Wife's first, second, fifth, and sixth issues together, because they raise the same question: whether the Bank lacks standing to bring this mortgage foreclosure action.

In a foreclosure action, the plaintiff can prove standing either by showing that it (1) originated or was assigned the mortgage, or (2) is the holder of the note specially indorsed to it or indorsed in blank. ***J.P. Morgan Chase Bank, NA. v. Murray***, 63 A.3d 1258, 1267-68 & n.6

(Pa.Super.2013). The trial court held, and we agree, that the Bank proved standing both ways.

First, the Bank owns the Wilson's mortgage via assignment. The complaint in a mortgage foreclosure action must allege "the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments." Pa.R.Civ.P. 1147(a)(1). The Bank's complaint set forth the original parties and date of the Wilsons' mortgage. It further alleged that the mortgage was assigned from the original lender, America's Moneyline Inc., to Saxon Mortgage Inc., and then to the Bank. Moreover, in support of summary judgment, the Bank submitted copies of the recorded mortgage and assignments. The recorded mortgage assignments showed an unbroken chain from the original lender to the Bank[15]. Because the Bank is the current mortgage owner, it has standing to enforce the mortgage.

Second, the Bank holds the note for the Wilsons' loan, and the note is indorsed in blank. Mortgage notes are negotiable instruments under the Uniform Commercial Code ("UCC"). **Murray**, **supra**, 63 A.3d at 1263-68. The UCC provides that a note is payable to its bearer if it is indorsed "in

---

[15] Bank Mot. Summ. J. Exs. A2, A3.

blank", i.e., it is not indorsed to an identified person or to the bearer[16]. In this case, America's Moneyline Inc. specially indorsed the note to Saxon Mortgage. Saxon Mortgage then indorsed the note in blank[17]. The note was then transferred to the Bank[18]. 13 Pa.C.S. § 3203(a) ("an instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument"). Because the note is indorsed in blank, and because the Bank currently holds it as the transferee, the Bank has standing to enforce the Wilsons' payment obligation. 13 Pa.C.S. § 3203(b) ("transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course. . .")

Wife argues unsuccessfully that the Bank lacks standing. She first claims that the note is not indorsed in blank but instead is specially indorsed

_____

[16] **See** 13 Pa.C.S. § 3205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed"). A "special indorsement," in contrast, is one made by the holder of an instrument that identifies a person to whom it makes the instrument payable. 13 Pa.C.S. § 3205(a). Such an indorsement renders the instrument payable to the identified person, who is the only person who may transfer that note by subsequent indorsement. **Id**.

[17] Bank Mot. Summ. J. Ex. A1 at 3.

[18] Bank Mot. Summ. J. Ex. B ¶ 4.

and payable to America's Moneyline, Inc. Wife ignores the indorsement from America's Moneyline to Saxon Mortgage and the later indorsement in blank by Saxon Mortgage. Wife further argues that the indorsements are not effective because they are undated. Nothing in the UCC requires an indorsement to be dated in order to be effective. **See** 13 Pa.C.S. § 3204(a) (general definition of indorsement); 13 Pa.C.S. § 3205 (definitions of blank indorsement and special indorsement).

Wife also argues that the indorsements are ineffective because they were made by the same person, Tracie Leckie, on behalf of both America's Moneyline and Saxon Mortgage. As the trial court observes, there is nothing facially improper about the same person executing a document on behalf of different parties. Trial Court Opinion, p. 7 (citing **In Re Lampe**, 665 F.3d 506, 517 (3d Cir.2011) (applying Pennsylvania law))[19]. Contrary to what

_____

[19] Citing 15 Pa.C.S. § 1728, **Lampe** observes that a corporate officer may stand on both sides of transaction, but he owes a duty of care and a fiduciary duty to both corporations. Section 1728 further confirms that a corporate officer may stand on both sides of the transaction, providing in relevant part:

> A contract or transaction between a business corporation and one or more of its directors or officers or between a business corporation and another domestic or foreign corporation for profit or not-for-profit, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or

*(Footnote Continued Next Page)*

- 10 -

Wife claims, the Bank did not have the burden of proving that Leckie could sign on behalf of both America's Moneyline and Saxon Mortgage, since there was nothing inherently suspect about her doing so. 15 Pa.C.S. § 1728; *Lampe*, *supra*, 665 F.3d at 517.

Finally, Wife argues that the Bank cannot enforce the note because it did not produce the original note for inspection. The Bank submitted an affidavit attesting that it was the legal owner of the note and attaching a

*(Footnote Continued)* _____

> officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his or their votes are counted for that purpose, if:
>
> (1) the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors even though the disinterested directors are less than a quorum;
>
> (2) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or
>
> (3) the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders.

15 Pa.C.S. § 1728(a).

true and correct copy of the note[20]. This is sufficient evidence of the Bank's possession of the note and establishes it as the note holder entitled to enforce the instrument. 13 Pa.C.S. §§ 1201, 3301. If Wife wanted to physically inspect the note, she could have done so through discovery. **See** Pa.R.Civ.P. 4009.1(a) (procedure for requesting inspection of designated documents). Wife failed to take advantage of this mechanism.

We now turn to Wife's third argument on appeal, her claim that the Bank failed to provide a proper verification to its complaint. The complaint was verified by Regina Alexander, Assistant Vice President of Saxon Mortgage Services, Inc. Alexander stated that she had authority to verify the complaint on behalf of Saxon Mortgage Services, Inc., which was the servicing agent and attorney-in-fact for the Bank at that time. Alexander also states that the allegations in the complaint are "true and correct to the best of my knowledge, information and belief."

Although the verification to the Bank's complaint might be technically incorrect,[21] we do not find that Wife suffered any prejudice from Alexander's verification. The Rules of Civil Procedure "shall be liberally construed to

_____

[20] Bank Mot. Summ. J. Ex. B ¶ 4.

[21] The verification might violate Rule 1024(c) because it is signed by an employee of the Bank's agent, Saxon Mortgage Services, Inc., instead of by an employee of the Bank itself. In such circumstances, the verification should explain why a Bank employee did not sign the verification. **Id**. This verification fails to provide any such explanation.

secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action. . .*may disregard any error or defect of procedure which does not affect the substantial rights of the parties*."  Pa.R.Civ.P. 126 (emphasis added).  The verification did not affect Wife's substantive rights, since there is no dispute that the mortgage is in default[22].

In her fourth argument on appeal, Wife complains that the Bank's actions "are in violation of state and/or federal laws regulating the transfer of financial instruments," because the signatories to the mortgage assignments are so-called "robo-signers". Wife waived this argument by failing to raise it in the trial court.  Pa.R.A.P. 302 ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

_____

[22] The Bank asserted in paragraphs 8-10 of its motion for summary judgment that the mortgage is in default and attached an affidavit confirming the default and amount of the debt.  In response, Husband's and Wife's answer to the motion for summary judgment simply states: "Denied." This is not sufficient to raise a genuine issue of fact concerning the default in payment.  *See* Pa.R.Civ.P. 1035.3(a) (providing in relevant part that the respondent to a motion for summary judgment "may not rest upon the mere allegations or denials of the pleadings but must file a response. . .identifying (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced").

Finally, in her seventh argument on appeal, Wife argues that "both the assignment(s) of the mortgage and the signatures on the assignment thereof give rise to genuine issues of material fact." Her argument on this point is nothing more than a boilerplate claim of lack of authenticity. Brief For Appellant, pp. 18-19 ("while it is clear in this case that an assignment of mortgage was filed prior to commencement of this action, the authenticity and validity of the documents is questionable because simply filing it does not make it a truthful document and that inference is in favor of the Defendants"). Wife failed to submit evidence in response to the Bank's motion for summary judgment that raised a genuine issue of material fact concerning the authenticity of these documents.

For these reasons, we affirm the order granting summary judgment to the Bank.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/7/2015