J-S02044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
:
v. :
:
:
:
EDWARD MONTGOMERY : No. 104 EDA 2020

Appeal from the Order Entered November 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-MD-0006730-2019

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
:
v. :
:
:
:
EDWARD MONTGOMERY : No. 2357 EDA 2020

Appeal from the Order Entered November 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-MD-0006730-2019

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 10, 2021**

The Commonwealth appeals from the order granting Appellee Edward Montgomery leave to appeal his summary traffic convictions to the Court of Common Pleas *nunc pro tunc.* The Commonwealth asserts that the trial court erred in granting the petition because Appellee did not demonstrate that extraordinary circumstances caused his delay in filing this appeal and that he promptly sought *nunc pro tunc* relief. We are constrained to reverse.

On July 7, 1994, Appellee was issued five traffic citations for summary violations of the Vehicle Code. Pet. to Appeal *Nunc Pro Tunc*, 10/11/19, at 1. Appellee was convicted of these summary violations on May 21, 1998. ***Id.***

On October 11, 2019, Appellee filed a petition seeking to appeal his summary convictions *nunc pro tunc*. ***Id.*** Appellee filed several other petitions seeking reinstatement of his appeal rights for tickets issued between 1996 and 2015, none of which are the subject of this appeal. N.T., 11/15/19, at 3, 6-7, 13-14, 16. The trial court held a hearing on all of these petitions on November 15, 2019.[1] ***Id.*** at 3-5.

At the hearing, Appellee testified that "I never paid attention to the ticket[s]" and that he didn't go to Traffic Court because "I was . . . young, and I guess I didn't -- wasn't caring about the tickets at the time." ***Id.*** at 5, 6. Appellee described how he was repeatedly incarcerated as a scofflaw for these and subsequent tickets in 1998 and 1999. ***Id.*** at 6-7. Appellee went to Traffic Court on some of his tickets and was found guilty. ***Id.*** at 7. Appellee further testified that he was incarcerated from 2008 to 2012, and again from 2015 to 2019. ***Id.*** at 7-8. Appellee explained that he received more traffic citations in 2015, and he was incarcerated at the time those cases were heard in Traffic Court. ***Id.*** at 12-13.

---

[1] Appellee's petitions were numbers 3 through 29, 67, and 68 on the trial court's hearing list. ***See*** N.T., 11/15/19, at 3, 12. The record does not indicate which hearing list number corresponded to the petition that is the subject of this appeal.

Appellee explained the reasons he filed the petitions for leave to appeal *nunc pro tunc*:

> I just wanted to appear at trial now since -- even though it's so long, but I'm ready to take responsibility of my -- you know what I mean? -- for my actions. I just wanted to appear at trial and take a -- I know that it won't -- I never paid. I ain't -- I mean, I'll be on a payment plan forever.
>
> * * *
>
> I just wanted to appear at trial. I know these tickets are old. I just wanted to appear at trial -- try to get my license back if that's possible.

*Id.* at 13-14.

The Commonwealth objected to several of Appellee's petitions, including the instant petition pertaining to the July 7, 1994 tickets.[2] *Id.* at 14. The Commonwealth argued that it would be prejudiced by going forward because most of the officers who issued the tickets were probably retired or would not be able to remember issuing the citations. *Id.* at 15. The Commonwealth argued Appellee admitted that he knew about these tickets and was not denied an opportunity to be heard. *Id.* at 16. The Commonwealth noted that Appellee admitted that because he was "young and dumb[,]" he did not contest the tickets in Traffic Court. *Id.* at 16, 18.

---

[2] The Commonwealth did not object to the petitions to appeal *nunc pro tunc* regarding the 2015 traffic tickets, which are the not subject of this appeal, because Appellee was incarcerated at that time of trial. N.T., 11/15/19, at 14. The Commonwealth requested that trial court only grant Appellee's petitions for those tickets where Appellee was found guilty *in absentia* and where Appellee could show that he was unable to appear at trial because he was incarcerated. *Id.* at 18.

The trial court stated:

> I do find . . . that you presented compelling factual circumstances to this [c]ourt. And as a result on [numbers] 3 through 29, with objection, I do grant all of your petitions on 3 through 29.
>
> \*     \*     \*
>
> That's 3 through 29 is granted without -- I mean over objection based on the compelling factual circumstances that I've just determined.
>
> And 67 and 68 is granted without objection by not being opposed.

*Id.* at 19-20.

On December 13, 2019, the Commonwealth filed a timely notice of appeal from the order granting Appellee leave to appeal *nunc pro tunc* his convictions from the July 7, 1994 tickets. This notice of appeal was docketed in this Court at 104 EDA 2020. This notice of appeal did not include a certification pursuant to Pa.R.A.P. 311(d). The Commonwealth filed a timely court-ordered Pa.R.A.P. 1925(b) statement, and the trial court filed a responsive opinion.

The Commonwealth filed an amended notice of appeal on December 3, 2020, which included a Pa.R.A.P. 311(d) certification. This Court docketed the December 3, 2020 notice of appeal at 2357 EDA 2020. On January 12, 2021, the Commonwealth filed an application to consolidate the appeals, which this Court granted on January 21, 2021.

The Commonwealth raises the following issues for our review:

1. Did the trial court err in granting [Appellee] leave to appeal *nunc pro tunc* his summary conviction for a traffic offense even though [Appellee] failed to demonstrate that his delay in filing

- 4 -

the appeal was caused by extraordinary circumstances involving fraud or a wrongful or negligent act of a court official resulting in injury to the [Appellee]?

2. Did the trial court err in granting [Appellee] leave to appeal *nunc pro tunc* his summary conviction for a traffic offense even though [Appellee] failed to demonstrate that, upon learning of the existence of the grounds relied upon for *nunc pro tunc* relief, he acted promptly to seek such relief?

Commonwealth's Brief at 2 (some formatting altered).[3]

Initially, we must address our jurisdiction over this appeal. ***See Commonwealth v. Burks***, 102 A.3d 497, 500 (Pa. Super. 2014) (noting that "[t]his Court can raise the matter *sua sponte*, as the issue is one of jurisdiction to entertain the appeal" (citation omitted)). "In this Commonwealth, an appeal may only be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order." ***Commonwealth v. Brister***, 16 A.3d 530, 533 (Pa. Super. 2011) (citation and quotation marks omitted).

In ***Commonwealth v. Lindey***, 760 A.2d 416 (Pa. Super. 2000), this Court explained:

The order granting a request for a *nunc pro tunc* appeal from a conviction at the [magisterial district judge[4]] level to the Court of Common Pleas cannot be considered final under Pa.R.A.P. 341. It clearly does not end the litigation of this matter. However, we

---

[3] Appellee did not file a brief.

[4] Here, Appellee sought to appeal *nunc pro tunc* from the Philadelphia Traffic Court to the Court of Common Pleas. The Vehicle Code treats Philadelphia Traffic Court judges as equivalent to magisterial district judges. ***See*** 75 Pa.C.S. § 102 (stating that, for the purposes of the Vehicle Code, the term "magisterial district judge" includes a judge of the Philadelphia Traffic Court).

find we have jurisdiction to consider this appeal as an interlocutory appeal as of right under Pa.R.A.P. 311(a)(6), which allows an appeal as of right from an order awarding a new trial. The trial court's grant of the *nunc pro tunc* appeal from the conviction at the [magisterial district judge] level allowed the case to proceed to a *de novo* trial before the Court of Common Pleas. This action, in effect, is the grant of a new trial. The Commonwealth has a right to have this order reviewed. Absent such a right the case may proceed to trial and, in the event the Appellee is found not guilty of the charges, the Commonwealth will never have an opportunity to challenge the propriety of the trial court's actions which allowed the case to be opened and tried.

*Lindey*, 760 A.2d at 418.

This appeal is from an order granting appeal *nunc pro tunc* from a conviction in the Philadelphia Traffic Court, and therefore this Court has jurisdiction to consider this appeal pursuant to Pa.R.A.P. 311(a)(6). *See id.* The Commonwealth perfected the appeal when it filed its timely notice of appeal on December 13, 2019, at 104 EDA 2020. *See id.* Further, because the Rule 311(d) certification is unnecessary to invoke this Court's jurisdiction, the Commonwealth's appeal filed on December 3, 2020, at 2357 EDA 2020, is duplicative of its proper appeal at 104 EDA 2020. Therefore, we dismiss the appeal at 2357 EDA 2020.

Although the Commonwealth raises two questions on appeal, it argues those issues together. Commonwealth's Brief at 10-14. The Commonwealth claims that the trial court erred in granting Appellee's petition because Appellee did not demonstrate that he was not entitled to *nunc pro tunc* relief. *Id.* at 10. Specifically, the Commonwealth argues that Appellee admitted he did not care about the tickets and did not pay attention to them and that his

failure to appeal his summary traffic convictions was not the result of extraordinary circumstances. *Id.* at 11. Further, the Commonwealth contends that Appellee did not establish that "he acted promptly upon learning the existence of the grounds relied upon for *nunc pro tunc relief*." *Id.* (citation and quotation marks omitted). The Commonwealth asserts the trial court erred by concluding, contrary to the record, that Appellee "had demonstrated just cause for missing court dates by showing he was incarcerated for a vast majority of those hearings . . . ." *Id.* at 13 (citation and quotation marks omitted). The Commonwealth contends that Appellee's incarceration after 2008 was irrelevant to his convictions for 1994 traffic offenses. *Id.* at 13.

This Court has stated our standard of review as follows:

The allowance of appeal *nunc pro tunc* is within the sound discretion of the trial court, and our scope of review of a decision of whether to permit an appeal *nunc pro tunc* is limited to a determination of whether the trial court has abused its discretion or committed an error of law. Orders granting or denying a petition to appeal *nunc pro tunc* are reversible only in instances where the court abused its discretion or where the court drew an erroneous legal conclusion.

*Commonwealth v. Yohe*, 641 A.2d 1210, 1211 (Pa. Super. 1994) (citations omitted and some formatting altered).

Further, this Court has explained, "[i]n this context, an abuse of discretion is not merely an error of judgment, but occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown by

the evidence or the record." ***Commonwealth v. Savage***, 234 A.3d 723, 726 (Pa. Super. 2020) (citation and quotation marks omitted).

Generally, a notice of appeal from a summary conviction, including for traffic violations, must be filed within thirty days of the conviction. ***See id.*** (citing Pa.R.Crim.P. 460(A)). "[A]n appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." ***Commonwealth v. Williams***, 893 A.2d 147, 150 (Pa. Super. 2006) (citation and quotation marks omitted).

This Court has explained:

> A party seeking leave to appeal from a summary conviction *nunc pro tunc* has the burden of demonstrating two things: (1) that the delay in filing his appeal was caused by extraordinary circumstances involving fraud or a wrongful or negligent act of a court official resulting in injury to that party and (2) that upon learning of the existence of the grounds relied upon for *nunc pro tunc* relief, he acted promptly to seek such relief.

***Yohe***, 641 A.2d at 1212 (citation omitted); ***see also Savage***, 234 A.3d at 727 (stating "the touchstone for our inquiry is whether [the petitioner] was denied [his] right of appeal by circumstances not of [his] own doing so as to merit the grant of this extraordinary remedy" (citations and quotation marks omitted)).

In ***Commonwealth v. White***, 806 A.2d 45 (Pa. Super. 2002), the trial court denied a petition for leave to appeal *nunc pro tunc* from two summary convictions. ***White***, 806 A.2d at 46. During the evidentiary hearing, the petitioner testified that he received a copy of the citations but he "never read

them." *Id.* The trial court denied the petition, holding that the record did not establish that the petitioner's "failure to file timely appeals . . . was due to fraud or a breakdown of the [c]ourt system or that he acted promptly to seek relief from the entry of his guilty pleas." *Id.* at 47 (citation and quotation marks omitted). This Court affirmed, concluding that there were "no extraordinary circumstance that prevented [the petitioner] from appealing his summary convictions[.]" *Id.*

Here, the trial court explained:

[Appellee] demonstrated just cause for missing court dates as he was incarcerated for a vast majority of those hearings. Other times he had no knowledge of scheduling. Hence, more [failures to appear], more incarceration and more cyclical confusion. In addition, the former Philadelphia Traffic Court created a byzantine system of incarcerating scofflaw violators and then dangling seemingly simple solutions to a complex problem with the illusory concept of easy monthly payments while the corpus debt engorged itself to enormous sums. The backside of the issue, namely the [Pennsylvania] Department of Transportation kept the unsuspecting violator unlicensed. The fundamental unfairness of this former system and [Appellee's] unwitting participation in it, created a situation of hopelessness necessitating readjustment and rectification in the form of granting the relief sought. Th[e trial] court utilized its own elementary discretion in assessing the totality of the circumstances by which [Appellee] came to be in the position he found himself at this point in his life. Th[e trial] court believed that either wrongful (but not intentional) or negligent acts occurred by which the [T]raffic [C]ourt and [Appellee] intersected, thereby creating the impossible state of affairs by which [Appellee] existed. His *pro se* efforts at rectifying the summary convictions via *nunc pro tunc* appeals were as timely as possible for his own knowledge and experience as a layman. The descriptions of [Appellee] in his dealings with the [T]raffic [C]ourt at various phases of its existence . . . demonstrate, in th[e trial c]ourt's discretion, a breakdown in the operation of the court that occurred in this matter and significantly impacted [Appellee] to his detriment, requiring relief. *See Yohe*, 641 A.2d at 1212.

> "An appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." **Commonwealth v. Williams**, 893 A.2d 147, 150 (Pa. Super. 2006) (citation omitted), *appeal denied*, 921 A.2d 497 (Pa. 2007). The only way [Appellee] could attack the convictions was by obtaining relief through a petition for leave to appeal *nunc pro tunc*. It was the duty of th[e trial c]ourt to hear, listen, act and apply the facts and circumstances of this case to the law and to remedy the plight of [Appellee].
>
> * * *
>
> [The Commonwealth's] position that [Appellee] is ineligible for *nunc pro tunc* relief because he did not demonstrate "that the delay in filing his appeal was caused by extraordinary circumstances involving fraud or a wrongful or negligent act of a court official resulting in injury to that party["] is misplaced. To the contrary, as set forth above, extraordinary circumstances, in this court's discretion, involving court operational breakdown resulting in prejudice to [Appellee] abounded. All factors of this ongoing pattern of hopelessness and its derivation had been considered by the [trial c]ourt. The evidence was sufficient to establish th[e trial] court's action is intended as a remedy to vindicate [Appellee's] right to an appeal where that right has been lost due to certain extraordinary circumstances. For all of the foregoing reasons, it is the opinion of th[e trial] court that the court's judgment of sentence should be affirmed.

Trial Ct. Op., 8/14/20, at 6-7 (some citations and some formatting altered).

Based on our review, we conclude that the record does not support the trial court's finding that extraordinary circumstances involving wrongful or negligent acts of court officials caused the delay in the filing of the appeal from Appellee's Traffic Court convictions. At the hearing before the trial court, Appellee admitted that he did not pay attention to the tickets he received in the 1990s because he did not care about them. **See** N.T., 11/15/19, at 5-6. Appellee testified that he was incarcerated as a scofflaw several times in the 1990s. Further, Appellee testified that he only missed Traffic Court trials in

2015 because he incarcerated at the time. *Id.* at 6-8, 12-13. By Appellee's own admission, he was aware of the July 7, 1994 traffic tickets and ignored them, resulting in his convictions. *Cf. White*, 806 A.2d at 46-47 (affirming the trial court's denial of petition for leave to appeal *nunc pro tunc* where petitioner testified he never read his citations).

Accordingly, we are constrained to conclude that the trial court abused its discretion. *See Savage*, 234 A.3d at 726; *Yohe*, 641 A.2d at 1212. For these reasons, we reverse the order below granting Appellee leave to appeal *nunc pro tunc* from his convictions resulting from tickets issued on July 7, 1994.

Order reversed. Appeal at 2357 EDA 2020 dismissed. Jurisdiction relinquished.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 3/10/2021*